UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LENA NAPOLI,

                Plaintiff,          **MEMORANDUM & ORDER**
                                               17-CV-6956 (SJF) (SIL)

       v.

DELUXE CORPORATION, DELUXE SMALL
BUSINESS SALES, INC., and SAFEGUARD
MARKETING SOLUTIONS USA, INC.,

                Defendants.
----------------------------------------------------------------X
FEUERSTEIN, District Judge:

Plaintiff Lena Napoli ("Plaintiff" or "Napoli") commenced this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.* and New York Labor Law ("NYLL") seeking to recover *inter alia,* minimum wages, unpaid overtime wages, and spread of hours pay from Defendants Deluxe Corporation and Deluxe Small Business Sales, Inc. (collectively, "Deluxe") and Safeguard Marketing Solutions USA Inc. ("Safeguard") (collectively "Defendants"). Defendants have moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion, Docket Entry ("DE") [25]. Plaintiff opposes the motion. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the Amended Complaint ("AC"), DE [19], and are assumed to be true for purposes of this motion.[1] Deluxe Corporation and its subsidiary, Deluxe

---

[1] Defendants have provided a Transition Services Agreement effective June 1, 2016, and two subsequent amendments to this agreement, that refer to an Asset Purchase Agreement executed by Deluxe and L.A.M. Enterprises ("LAM"). The Transition Services Agreement and amendments were signed by Lena Napoli as President of LAM. As these documents are neither referenced by, nor integral to, the allegations of the Amended Complaint, the Court has not considered them in deciding this motion.

Small Business Sales, Inc., are Minnesota corporations. Safeguard is a New York corporation. Napoli was employed by Deluxe from June 1, 2016 until March 31, 2017, and then by Safeguard from April 1, 2017 until August 11, 2017. AC ¶¶7, 9. She performed services for both Defendants that included "product research, preparation of pricing and quotes, placing of customer orders, interaction with customers and customer service, managing the office, trade show logistics and various other functions." *Id.* ¶¶18, 23. She alleges that both Deluxe and Safeguard had annual gross volume sales in excess of $500,000, *id.* ¶¶11, 14, and were enterprises engaged in interstate commerce within the meaning of the FLSA. *Id.* ¶¶13, 16.

Plaintiff makes additional, identical allegations regarding her employment with both Deluxe and Safeguard: the work was done at each defendant's "satellite office on Long Island," AC ¶¶19, 24; each defendant was aware that Napoli was performing services and "consented to the same," *id.* ¶¶ 20, 25; each defendant had the authority to terminate Napoli or alter the conditions of her employment at any time, *id.* ¶¶21-22, 26-27; each defendant supervised and directed her work, and was aware of her work schedule. *Id.* ¶¶ 30-35.

Napoli declares that the was a covered, non-exempt employee for both Defendants within the meaning of the FLSA and NYLL. AC ¶37. At both locations, she alleges to have worked Monday through Friday from 8:00 a.m. to 5:00 p.m., and Saturdays from 10:00 a.m. to 3:00 p.m. for "an average of fifty-five (55) hours per work week." *Id.* ¶39. She also claims to have worked up to twelve (12) hours a day "[d]uring certain seasons and certain times." *Id.* ¶41. She alleges that she was never paid for her services. *Id.* ¶¶ 44-45.

**B. Procedural History**

Plaintiff's amended complaint states causes of action for: (1) failure to pay her the statutory minimum wage in violation of the FLSA and NYLL; (2) failure to pay her overtime

wages in violation of the FLSA and NYLL; (3) failure to pay spread of hours pay under NYLL; and (4) violations of NYLL by failing to provide wage statements and wage notices. Defendants now move to dismiss, arguing that the amended complaint fails to plead an employer-employee relationship between the parties, and fails to state a claim for entitlement to unpaid overtime and minimum wages. Defendants further argue that the amended complaint should be dismissed pursuant to Rule 12(b)(7) for failure to name LAM, which Defendants claim is a necessary and indispensable party.

## II. LEGAL STANDARDS

The standards for analyzing a motion to dismiss pursuant to Rule 12(b)(6) are well-established. The court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). The court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S at 679. A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at

678-679; *see also Twombly,* 550 U.S. at 555 (holding that a "formulaic recitation of cause of action's elements will not do. . . Factual allegations must be enough to raise a right to relief above the speculative level" (citations omitted)). While Rule 8 does not require "detailed factual allegations," it does require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

## III. DISCUSSION

### A. Failure to Plead an Employer-Employee Relationship

To state a claim for failure to pay minimum wage or overtime wages, a plaintiff must allege that "she was the defendant's employee, that her work involved interstate activity, and that she worked hours for which she did not receive minimum and/or overtime wages." *Tackie v. Keff Enters. LLC,* No. 14-CV-2074, 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014). Only an employer may be held liable for violations of the FLSA. *See* 29 U.S.C. § 207(a)(1). An "employer" under the FLSA is defined broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and may include "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. §§ 203(a).

The Second Circuit instructs that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961) (internal quotation marks omitted), determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity,' *Rutherford Food Corp. v. McComb,* 331 U.S. [722,] 730, 67 S. Ct. 1473, [91 L. Ed. 1772 (1947)]." *Barfield v. New York City Health & Hosps. Corp.,* 537 F.3d 132, 141 (2d Cir. 2008). "The 'economic reality' test applies equally to whether workers are employees and to whether managers or owners are

4

employers." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). In the context of FLSA cases, employment is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield*, 537 F.3d at 142-43.

The Second Circuit has identified several sets of relevant factors to be used in analyzing various employment situations. The "traditional four-factor test," *Barfield*, 537 F.3d at 144, examines the degree of control exercised over the worker, asking "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (internal quotation marks and citation omitted). When the issue turns on whether a plaintiff was an independent contractor or an employee, the following, non-exhaustive factors may be evaluated: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988). In yet another case, the Second Circuit set forth a six-factor test to be used to determine whether the "employer" exercised functional control over a worker, suggesting that a court look to:

> (1) whether [the manufacturer]'s premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the manufacturer]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [manufacturer] or [its] agents supervised plaintiffs' work; and (6)

whether plaintiffs worked exclusively or predominantly for [the manufacturer].

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003).

No one factor is conclusive, and the various criteria "'provide a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143 (quoting *Zheng*, 355 F.3d at 72). "A district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 375 (E.D.N.Y. 2013).

While the FLSA definitions and NYLL definitions are "nearly identical," *see Teri*, 980 F. Supp. 2d at 375, the New York test for an employer "focuses more on 'the degree of control exercised by the purported employer,' as opposed to the 'economic reality of the situation.'" *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quoting *Velu v. Velocity Express, Inc.*, 666 F.Supp.2d 300, 307 (E.D.N.Y. 2009)). Specifically, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198, 802 N.E.2d 1090, 770 N.Y.S.2d 692 (2003). Five factors of control identified by *Bynog* are whether the purported employee: "(1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." *Id.*

Despite the plethora of potentially relevant factors identified in the cases discussed above, Plaintiff in her amended complaint and papers in opposition addresses only the first two factors of the *Carter* test. Specifically, she summarily alleges that defendants "had the authority" to terminate her at any time or to alter the conditions of her employment, and that they

"supervised" and "directed" her work. She provides no facts to buttress these assertions. In her opposition papers, she continues to rely on the unadorned "facts" that Defendants supervised and directed her work and had the authority to alter the conditions of her employment." Plaintiff's Memorandum of Law in Opposition ("Pl. Opp."), DE [29], at 7. She does not allege that they controlled her work schedule, instead claiming that they were "aware" of her work schedule "and consented to same," and they "knowingly allowed" her to work in excess of forty hours per week. However, there is no factual support whatsoever for any of these conclusions, including facts in Plaintiff's possession such as the names of persons who hired, directed, and/or supervised her, or who knew and consented to her work schedule.

As to the remaining *Carter* factors, Plaintiff admits in her opposition papers that "Defendants did not set [her] rate and method of payment, or maintain proper employment records," but suggests that "these factors are not dispositive." Pl. Opp. at 6. While it is certainly true that no single factor is decisive in determining whether an employer-employee relationship existed, the absence of any allegations regarding these factors merely compounds the lack of factual support for the factors Plaintiff *did* attempt to satisfy.

Plaintiff's claims that she is entitled to relief rest largely upon one specific fact -- that Deluxe and Safeguard "never paid [her] for her services." As with all the allegations in the amended complaint, this statement is conclusory and is unaccompanied by any other supporting facts and as such, does not adequately plead that an employer-employee relationship existed. It is patently implausible that Plaintiff would work an average of fifty-five (55) hours per week for over fourteen (14) months without receiving any payment whatsoever or without having any conversations with her "employers" about her compensation. To be clear, it is not her claim that

she was never paid that dooms her complaint, it is the absence of a single fact to support such a circumstance that is fatal.

Plaintiff concedes that Defendants did not set the rate or method of payment, and that "[n]o wages were set," Pl. Opp. at 6, 9, thus raising the question of whether she had an expectation of compensation from Defendants. "The FLSA was intended to protect workers from substandard conditions and the 'fair-minded' employer from unfair competition." *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012). Not everyone who performs "work" is an "employee" for purposes of labor laws. While the definition of "employee" is broad, consistent with the FLSA's remedial purpose, it does not cover persons "who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152, 67 S. Ct. 639, 91 L. Ed. 809 (1947); *see also Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295, 105 S. Ct. 1953, 1958, 85 L. Ed. 2d 278 (1985) (noting that "[a] individual who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit,' is outside the sweep of the [FLSA]" (quoting *Walling*, 330 U.S. at 152)). Courts have found that persons who have performed work were not employees under the labor laws in various circumstances. For example, an individual may not be an employee for FLSA purposes where she participates in a program designed to prepare her for employment. *See, e.g, United States v. City of N.Y.*, 359 F.3d 83, 108 n.4 (2d Cir. 2004) ("a plaintiff who performed closely-supervised work nevertheless is not an employee under the 'economic realities' test if the plaintiff's reason for participating in the program is to further his own training or rehabilitation"). In cases involving interns, the Second Circuit has instructed that "the proper question is whether the intern or the

employer is the primary beneficiary of the relationship." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536 (2d Cir. 2016); *see also Figurowski v. Marbi Inv'rs, LLC*, No. 14-CV-7032, 2018 WL 1582072, at *10 (E.D.N.Y. Mar. 30, 2018) (where plaintiff-wife helped her husband, the employee, in various tasks he was hired to perform, wife was not an employee herself as the primary beneficiaries were the husband and wife, not the employer). Although inapplicable in the instant case, there is a codified volunteer exception for people providing services to public agencies. *Brown v. N.Y. City Dep't of Educ.*, 755 F.3d 154, 162 (2d Cir. 2014) ("[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered, is considered to be a volunteer during such hours." (quoting 29 C.F.R. § 553.101(a))).

Here, Plaintiff has provided no clues about the nature of the relationship between the parties and thus there is no factual context in which to evaluate the lone fact that she purportedly "worked" for fourteen months with absolutely no compensation. A complaint that merely "tenders naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, is not sufficient to withstand a motion to dismiss. *See also James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 321 (E.D.N.Y. 2012) (dismissing FLSA and NYLL claims where plaintiff failed to include factual allegations to support "Plaintiff has done little more than assert, in vague and conclusory manner, his entitlement to overtime compensation"). At best, Plaintiff's allegations are merely boilerplate recitations of a few of the factors of the economic realities test with absolutely no factual support. Upon review of the allegations of the complaint, an analysis of the *Carter* factors, and consideration of the totality of the circumstances, Plaintiff has failed to plausibly allege that Defendants were her employers. As the amended complaint fails to adequately allege an employer-employee relationship between the parties, it cannot state a claim

for unpaid overtime or minimum wages under either the FLSA or NYLL, and these claims are dismissed. *See generally Lundy*, 711 F.3d at 118 (upholding exercise of supplemental jurisdiction over NYLL overtime and minimum wage claims). The remaining arguments for and against dismissal need not be addressed.

## B. Supplemental Jurisdiction

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). In deciding whether to exercise supplemental jurisdiction, a district court must "balance[ ] the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720, 350 (1988)). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Cohill*, 484 U.S. at 350, n.7). Given that Plaintiff's federal FLSA claims are dismissed, along with the analogous NYLL claims for unpaid overtime and minimum wage, the Court declines to exercise supplemental jurisdiction over her remaining NYLL claims, and those claims are dismissed without prejudice.

## C. Leave to Amend

Plaintiff suggests that "[s]hould the Court find Napoli's pleading deficient in any way, however, leave to amend should be granted." Pl. Opp at 1; *see also id.* at 9 (requesting leave to amend and noting defendants' failure to identify prejudice should leave be granted); *id.* at 13 (concluding, without elaboration, that in the event of dismissal, "Plaintiff should be granted leave to amend"). Her request for leave to amend is denied.

Plaintiff has already amended her complaint once. At that time, she was aware that Defendants' proposed motion to dismiss the original complaint was based, in part, on her failure to adequately plead that Defendants were her employers. *See* Defendants' letter of 1/29/18, DE [13]. A premotion conference was held on March 26, 2018, at which time Judge Wexler gave Plaintiff a deadline to serve and file an amended complaint, *see* E-Order of 3/26/19, which she did on April 19, 2018. Thus, Plaintiff was made aware of the defects in her pleading, had an opportunity to cure them, and used that opportunity, albeit unsuccessfully. *Brown v. Cerberus Capital Mgmt., L.P.*, 703 F. App'x 11, 15 (2d Cir. 2017) (summary order) (no abuse of discretion in denying motion to amend where "Plaintiffs enjoyed a full opportunity to amend, having been apprised of Defendants' views of the original complaint's shortcomings").

Furthermore, Plaintiff has failed in her *pro forma* request to provide any proposed additional facts that would raise her claims from implausible to plausible. *See e.g., Brown*, 703 F. App'x at 15 (noting plaintiff's failure to identify "any way in which a further amendment of its factual allegations would cure the amended complaint's shortcomings"); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (denial of leave to amend warranted where "plaintiffs have identified no additional facts or legal theories—either on appeal or to the District Court—they might assert if given leave to amend"); *Chudnovsky v. Leviton Mfg. Co.*, 158 F. App'x 312, 314 (2d Cir. 2005) (affirming denial of leave to amend where plaintiff "did not indicate that he could allege additional facts that would cure the deficiencies in his already-amended complaint"). Instead, she makes the brief, unsupported statement that in the event Defendants' motion to dismiss is granted, she requests leave to amend, but offers no further factual allegations at all, let alone facts that would make her claims plausible. Given Plaintiff's prior amendment, coupled with her failure to articulate in any

11

manner how a second amended complaint would cure the pleading deficiencies, leave to further amend is denied.

## IV. CONCLUSION

Defendants' motion to dismiss [25] is granted. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

/s/
Sandra J. Feuerstein
United States District Judge

Dated: June 21, 2019
       Central Islip, New York